Steven R. Weinmann (SBN 190956)
Steven.Weinmann@capstonelawyers.com
Mark A. Ozzello (SBN 116595)
Mark.Ozzello@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

John A. Marshall (SBN 109557)
MARSHALL & ASSOCIATES
26565 West Agoura Road,
Suite 200
Calabasas, California 91302
Telephone (818) 617-9337
Ext. 2243
John@marshallbusinesslaw.com

Attorneys for Plaintiffs
Michael and Gina Oddi

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL and GINA ODDI, individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLIED PROPERTY AND CASUALTY INSURANCE CO., an Iowa company, and NATIONWIDE MUTUAL INSURANCE CO., an Ohio company,<br><br>    Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violations of Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*<br>(2) Breach of Contract<br>(3) Breach of Implied Covenant of Good Faith & Fair Dealing<br>(4) Unjust Enrichment<br>(5) Declaratory Relief<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Michael and Gina Oddi ("Plaintiffs") allege the following against Defendants Allied Property and Casualty Insurance Co. ("Allied") and Nationwide Mutual Insurance Co. ("Nationwide")("Defendants") based upon the investigation of their counsel and on information and belief, except as to those allegations specifically pertaining to themselves or their counsel, which are based upon personal knowledge:

## INTRODUCTION

1.    In the aftermath of devastating and destructive wildfires throughout California in 2017, the state legislature enacted several bills to amend Cal. Insurance Code § 2051.5, including AB-1800. These amendments were made in an effort to clarify protections afforded to California homeowners affected by wildfires. As the legislature noted:

> "The purpose of AB 1800 is to clarify policyholders' rights when, after a total loss, the policyholder decides to rebuild or replace the destroyed structure at a location other than the insured location. It has long been the law that policyholders are not required to rebuild on the insured site in order to obtain the coverage provided by a replacement cost policy. However, according to the Department of Insurance (DOI), some insurers have maintained that 'extended replacement cost' and 'building code upgrade' coverages do not transfer to a new location. **The bill is intended to make it clear that, if the policyholder bought these coverages, they transfer if the policyholder decides to rebuild or replace at a new location**."[1]

///

---

[1] See http://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180AB1800 (emphasis added).

CLASS ACTION COMPLAINT

2.      The legislature determined that these clarifications to the existing law were necessary because, as the legislature stated:

> "[S]ome insurers chose to interpret the statute that grants the right to rebuild or replace at another location to mean that they had to pay out only what a 'replacement cost policy would require, even if the policyholder had purchased better coverage. That better coverage would only apply at the original location. This reliance on a 'term of art' reading of the word 'replacement' in the statute is contrary to common sense, and contrary to an April 3, 2008 DOI General Counsel's opinion, which correctly describes the law that entitles a policyholder to use the full extent of the coverage that was purchased to rebuild or replace either at the insured location, or at another location. The bill is merely making it crystal clear that this is the rule."[2]

3.      However, despite the "crystal" clarity of the statute, Defendants continue to deny applicable coverage to policyholders, like Plaintiffs, who have suffered catastrophic damage to their homes as a result of California wildfires. Defendants' self-serving interpretation of Cal. Ins. Code § 2051.5 is not only patently incorrect, but is also the precise scenario the legislature intended to prevent when clarifying the statute in 2018 through the passage of AB-1800.

## **PARTIES**

4.      Plaintiffs are married individuals who reside in the State of California. At all relevant times, Defendants insured Plaintiffs' residence located at 580 Myrtle Court, Oak Park, California 91377 ("Insured Residence").

5.      Defendant Allied Property and Casualty Insurance Co. is a company organized and in existence under the laws of the State of Iowa and registered to do business in the State of California. Allied is a subsidiary of Nationwide Mutual Insurance Co. and Allied's corporate headquarters are located at 1100 Locust St., Des Moines, IA 50391.

6.      Defendant Nationwide Mutual Insurance Co. is a company organized and in existence under the laws of the State of Ohio and registered to do business

---

[2] *Id.*

in the State of California. Nationwide's corporate headquarters are located at One West Nationwide Blvd., Columbus, OH 43215.

7.     At all relevant times, Defendants were, and are, licensed insurance companies engaged in the business of insuring[3] homeowners in California and throughout the United States.

8.     Plaintiffs are informed and believe, and thereon allege, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants, each acting as the agent for the other, with legal authority to act on the other's behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

## JURISDICTION

9.     This is a class action.

10.     As discussed above, Defendant Nationwide Mutual Insurance Co. is a company organized and in existence under the laws of the State of Ohio and headquartered in Ohio.  Defendant Allied Property and Casualty Insurance Co., a subsidiary of Nationwide Mutual Insurance Co., is a company organized and in existence under the laws of the State of Iowa and headquartered in Iowa. Plaintiffs and other members of the Proposed Class are citizens of states different from Defendants' home states.

11.     On information and belief, the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

12.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

## VENUE

13.     Defendants Allied Property and Casualty Insurance Co. and Nationwide Mutual Insurance Co., through their business of insuring homeowners, have established sufficient contacts in this District such that personal jurisdiction

---

[3] "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability arising from a contingent or unknown event." Cal. Ins. Code § 22.

1    is appropriate. Defendants are deemed to reside in this District pursuant to 28

2    U.S.C. § 1391(a).

3        14.      In addition, a substantial part of the events or omissions giving

4    rise to these claims, and a substantial part of the property that is the subject of

5    this action, are in this District. Specifically, the events giving rise to this action

6    occurred in the Central District of California (County of Ventura), and the

7    subject property of plaintiffs, that was insured by Defendants was located in the

8    County of Ventura. The insured property of other Class Members, is located

9    throughout the State of California.

10        15.      Accordingly, venue is proper in this Court pursuant to 28 U.S.C. §

11    1391(a).

12                    **FACTUAL ALLEGATIONS**

13        16.      This case arises from Defendants' practice of denying coverage for

14    code upgrades to California homeowners under their Allied insurance policies.

15    Specifically Defendants uniformly and consistently deny coverage under the

16    'Ordinance or Law' provision of their policies for losses suffered from the total

17    destruction of Plaintiffs' and Class Members', Insured Residences as a result of

18    the devastating Woolsey Fire in November 2018, and other fires throughout the

19    state before and since, notwithstanding that  pursuant to Cal. Insurance Code

20    §2051.5, such losses must be considered a covered loss.

21        17.      California Insurance Code § 2051.5 provides, in relevant part:

22          (a) (1) Under an open policy that requires payment of the
23          replacement cost for a loss, the measure of indemnity is the
          amount that it would cost the insured to repair, rebuild, or replace
24          the thing lost or injured, without a deduction for physical
25          depreciation, or the policy limit, whichever is less.

26          (2) If the policy requires the insured to repair, rebuild, or
27          replace the damaged property in order to collect the full
          replacement cost, the insurer shall pay the actual cash value of
28          the damaged property, as defined in Section 2051, until the

damaged property is repaired, rebuilt, or replaced. Once the property is repaired, rebuilt, or replaced, the insurer shall pay the difference between the actual cash value payment made and the full replacement cost reasonably paid to replace the damaged property, up to the limits stated in the policy.

(b) (1) (A) (i) A time limit of less than 12 months from the date that the first payment toward the actual cash value is made shall not be placed upon an insured in order to collect the full replacement cost of the loss, subject to the policy limit.

(ii) In the event of a loss relating to a "state of emergency," as defined in Section 8558 of the Government Code, a time limit of less than 36 months from the date that the first payment toward the actual cash value is made shall not be placed upon the insured in order to collect the full replacement cost of the loss, subject to the policy limit.

(iii) This section does not prohibit an insurer from allowing the insured additional time to collect the full replacement cost.

(B) An insurer shall provide to a policyholder one or more additional extensions of six months for good cause pursuant to clause (i) or (ii) of subparagraph (A) if the insured, acting in good faith and with reasonable diligence, encounters a delay or delays in approval for, or reconstruction of, the home or residence that are beyond the control of the insured. Circumstances beyond the control of the insured include, but are not limited to, unavoidable construction permit delays, the lack of necessary construction materials, or the unavailability of contractors to perform the necessary work.

(2) In the event of a covered loss relating to a state of emergency, as defined in Section 8558 of the Government Code, coverage for additional living expenses shall be for a period of no less than 24 months from the inception of the loss, but shall be subject to other policy provisions. An insurer shall grant an extension of up to 12 additional months, for a total of 36 months, if an insured acting in good faith and with reasonable diligence encounters a delay or delays in the reconstruction process that are the result of circumstances beyond the control of the insured. Circumstances beyond the control of the insured include, but are not limited to, unavoidable construction permit delays, lack of necessary construction materials, and lack of available

contractors to perform the necessary work. Additional extensions of six months shall be provided to policyholders for good cause.

**(c) In the event of a total loss of the insured structure, a policy issued or delivered in this state shall not contain a provision that limits or denies, on the basis that the insured has decided to rebuild at a new location or to purchase an already built home at a new location, payment of the building code upgrade cost or the replacement cost, including any extended replacement cost coverage, to the extent those costs are otherwise covered by the terms of the policy or any policy endorsement. However, the measure of indemnity shall not exceed the replacement cost, including the building code upgrade cost and any extended replacement cost coverage, if applicable, to repair, rebuild, or replace the insured structure at its original location.** (emphasis added).

18.     The Policy purchased by Plaintiffs was effective June 30, 2018, through June 30, 2019. Plaintiffs' Policy specifically included additional coverage for "Ordinance or Law" pursuant to § 2051.5. Specifically, the Policy provides that:

"a.     You may use up to 20% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

(1)   The construction, demolition, remodeling, renovation or repair of that part of that part of a covered building or other structure damagesd by a Peril Insured Against […]

b.     You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above."[4]

19.     On November 9, 2018, Plaintiffs' residence was completely destroyed by the Woolsey Fire in Ventura County. The Woolsey Fire was declared

---

[4] The Policy is attached hereto as Exhibit 1.

1   a Major Disaster by FEMA three days later.

2       20.    On January 3, 2019, Plaintiffs exchanged emails with Defendants

3   through Scott Mauldin ("Mauldin') of Allied, in an attempt to clarify the limits of

4   their Policy. At that time, Defendants appeared to agree on the following coverage

5   limits related to the total loss of the Plaintiffs' Insured Residence:

6           a. Dwelling -$504,600.

7           b. Other Structures - $50,460

8           c. Ordinance or Law -$100,920

9           d. Debris Removal - $100,920

10          e. Trees, Shrubs, and Other Plants - $25,230

11      21.    Also at this time, Defendants confirmed that the coverage for

12  Ordinance or Law and Debris Removal was in addition to the Dwelling Coverage.

13      22.    On January 24, 2019, Defendants declared Plaintiffs' insured

14  residence a total loss as a result of the Woolsey Fire.

15      23.    On March 11, 2019, Plaintiffs informed Defendants that they had

16  decided to replace the insured property rather than rebuild in the same location.

17  Shortly thereafter, Plaintiffs provided an estimate to Defendants to rebuild the

18  insured property. The estimate included a break down for costs relating to required

19  code upgrades in the amount of $51,000.00.

20      24.    In an email exchange with Defendants' representative Mauldin on

21  March 21, 2019, Plaintiffs were then informed that:

22          "You can use the coverage at your current house for a

23          replacement property at a different location."

24          "What we need to determine is the replacement cost with

25          ordinance or law (code) for your current house."

26          'We would need support for the code work that would

27          have been enforced if you did rebuild."

28

CLASS ACTION COMPLAINT

25.     Based upon these statements, Plaintiffs provided an estimate of the cost of rebuilding their home from a licensed building contractor, as well as necessary code upgrades as to the Insured Residence, and also moved forward with the purchase of a replacement property.

26.     Then, on March 27, 2019, Defendants' representative Mauldin stated the following to Plaintiffs, for the first time calling into doubt whether Defendants would pay for the cost of code upgrades:

> "The question relates to the ordinance or law coverage which the contractor estimated around $51,000."
>
> "The bill [AB1800] allows for that coverage to be used *for the other property* but we still have to follow the policy language which code must be enforced and incurred."
>
> "This bill [AB1800] is new and we are still working through the details as it related to how the bill and policy work together."
>
> "The main point is the extended Cov A is a go, but there could be questions related to the ordinance or law coverage."
>
> (emphasis added).

27.     On May 29, 2019, Plaintiffs received a letter from Defendant Allied setting forth the following position:

> "At this time, we have issued the extended limit payment for the dwelling."
>
> "You are going to send in bids related to ordinance or law (code) work related to the new house you purchased."
>
> "As we discussed, there are coverage questions related to these expenses since the policy requires an enforcement for code coverage to apply."

28.     In a letter from Mauldin dated August 1, 2019, Nationwide and Allied formally denied Plaintiffs' claim for coverage under their Ordinance or

Law coverage provision in the Policy. The letter cited the Ordinance or Law coverage provision, and then stated :

> "As you purchased an existing house at a different location than the location of the covered building or structure, and there is no ordinance or law that is being enforced which would require you to make any changes to the house, no coverage would apply for upgrades you are making to the home, based on the policy or provisions noted above."

29.     The letter incorrectly implied that the reimbursement sought for the code upgrades in question, was for upgrades at the replacement home, which was not the case and belied by the fact that Plaintiffs provided an estimate for such upgrades at the Insured Residence. Nationwide and Allied also asked for estimates of code work to be performed at the replacement property. Such an inquiry however, was irrelevant and not reasonably required or material to the resolution of Plaintiffs' claim. Defendants' interpretation of § 2051.5, in conjunction with Defendants' policy language, was in derogation of California Code of Regulations Fair Claims Settlement Practices Regulation 2695.7(d).

30.     Indeed, at the request of Plaintiffs, the California Department of Insurance reached out to Allied / Nationwide on August 13, 2019, and requested that they pay for the requested code upgrades under the Policy.

31.     In an August 27, 2019 letter, Nationwide Compliance Specialist Julie Carter  noted that she had read the complaint made by Plaintiffs to the California Department of Insurance, and that the DOI had made "an inquiry." Carter / Nationwide / Allied nevertheless made the same "mistake" regarding which property the requested upgrade costs pertained. In the letter, Ms. Carter confirmed that, even after reviewing information sent by Plaintiffs to Nationwide regarding Assembly Bill 1800 and California Insurance Code section 2015.5,  Nationwide / Allied would refuse to change its position: "As you purchased an existing house at a different location of the covered building or structure, and there is no ordinance or law that is being enforced which would require you to make changes to the

house, no coverage would apply for upgrades you are making to the home…"

32.    In response to subsequent correspondence from Plaintiffs, wherein they attempted to clarify some incorrect factual comments that Ms. Carter previously made, Ms. Carter sent a follow up letter stating:

> "I reviewed your letter, discussed your claim with claims leadership and would like to address your concerns."
>
> "At this time, there has been no change in Nationwide's position regarding Ordinance and Law."

33.    Plaintiffs *repeatedly* disabused Nationwide / Allied of the idea that the requested code upgrades were for the replacement home rather than the Insured Residence, or that the relevant law could be so interpreted to only cover required upgrades if the Insured Residence were actually being rebuilt. Plaintiffs have also diligently pursued their claim for code upgrade coverage under the Ordinancce or Law coverage in the Policy, including telephonic conversations with Allied representatives, and filing a complaint with the California Department of Insurance.

34.    As evidenced most recently by a September 20, 2019, letter from Nationwide Compliance Specialist Julie Carter regarding Plaintiffs' claim, Defendants continue to maintain their position that Plaintiffs' coverage for code upgrades to their Insured Property does not apply to their claim because Plaintiffs "purchased an existing house at a different location of the covered building or structure, and there is no ordinance or law that is being enforced which would require you to make any changes to the house."

///

///

35.    However, Defendants' position is in direct conflict with California Insurance Code § 2051.5, which mandates:

> "In the event of a total loss of the insured structure, a policy issued or delivered in this state shall not contain a provision that limits or denies, on the basis that the insured has decided to rebuild at a new location or to purchase an already built home at a new location, payment of the building code upgrade cost or the replacement cost, including any extended replacement cost coverage, to the extent those costs are otherwise covered by the terms of the policy or any policy endorsement."

36.    On information and belief, Defendants' position has been applied as company policy to numerous other owners of California real property who have suffered losses and who have chosen to rebuild elsewhere or purchase an existing property. Such persons have been denied, or had unreasonable delays in, the payment of their claims for code upgrades.

## CLASS ALLEGATIONS

37.    Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

38.    The Class is defined as:

> All Allied policyholders who owned real property in California insured by Allied Property and Casualty Insurance Co. with "Ordinance or Law" coverage, and who suffered a total loss and did not receive payment for benefits due under Ordinance or Law coverage when they decided to replace their insured structure at a new location, during the period from four years prior to the filing of the initial complaint through the date of certification (the "Class").

39.    Excluded from the Class are: (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is

CLASS ACTION COMPLAINT

assigned and the Judge's staff; and, (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

40.    Numerosity:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control.

41.    Typicality:  Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs, like all Class Members, owned real property in California insured through Allied, paid an additional premium for Ordinance or Law coverage, and were denied coverage when they replaced their homes at a different location than where the loss occurred. The representative Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that they have not received payment for benefits or experienced significant delays in receiving benefits paid for and rightfully owed under their insurance policies with Allied. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

42.    Commonality:  There are numerous questions of law and fact common to Plaintiffs and the Class that predominate over any question affecting only individual Class Members. These common legal and factual issues include the following:

(a)    Whether Defendants' conduct was unlawful, unfair and/or deceptive;

(b)    Whether Defendants breached the contract for insurance between Defendants and Plaintiffs, and all other similarly

1    situated individuals in California;

2        (c)    Whether Plaintiffs and other Class Members are entitled to

3            equitable relief, including but not limited to a preliminary

4            and/or permanent injunction; and

5        (d)    Whether Plaintiffs and other Class Members are entitled to

6            damages.

7    43.    <u>Adequate Representation</u>:  Plaintiffs will fairly and adequately

8    protect the interests of the Class Members. Plaintiffs have retained attorneys

9    experienced in the prosecution of class actions, and Plaintiffs intend to prosecute

10    this action vigorously.

11    44.    <u>Predominance and Superiority</u>:  Plaintiffs and Class Members have

12    all suffered and will continue to suffer harm and damages as a result of

13    Defendants' unlawful and wrongful conduct. A class action is superior to other

14    available methods for the fair and efficient adjudication of the controversy. Absent

15    a class action, most Class Members would likely find the cost of litigating their

16    claims prohibitively high and would therefore have no effective remedy at law.

17    Absent a class action, Class Members will continue to incur damages, and

18    Defendants' misconduct will continue without remedy. Class treatment of

19    common questions of law and fact would also be a superior method to multiple

20    individual actions or piecemeal litigation in that class treatment will conserve the

21    resources of the courts and the litigants and will promote consistency and

22    efficiency of adjudication.

23

24

25

26

27    ///

28    ///

## FIRST CAUSE OF ACTION

**(Violation of California Business & Professions Code § 17200 *et seq*.)**

45.     Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

46.     Plaintiffs brings this cause of action on behalf of themselves and on behalf of the Class.

47.     As a result of their reliance on Defendants' unlawful practices, Plaintiffs and the other Class Members suffered an ascertainable loss of money, property, and/or value of their insurance policies. Plaintiffs paid insurance premiums for coverage which was denied them, and they would not have purchased the insurance or would have paid less for it than they did had they known Defendants would not honor their commitments in the policy. Thus, they have lost money or property within the meaning of Californis Business & Professions Code §17200 et set.

48.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice."

49.     Defendants' acts, conduct and practices were unlawful, in that they constituted violations of California's Insurance Code § 2051.5.

50.     By its conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

51.     Defendants' acts, conduct, and practices were also unfair because:

(a)     the harm to consumers far outweighs the utility of Defendants' conduct, which is solely to increase Defendants' profits at the expense of consumers;

(b)     consumers could not reasonably avoid harm, as they are unaware prior to experiencing a complete loss of an insured property that Defendants will unlawfully deny coverage of

claims under an Ordinance or Law benefit if they choose to
replace instead of repair the Insured Property at a different
location; and

(c)    public policy, as set forth in federal and state consumer
protection and warranty statutes, including the California
Insurance Code, which favors consumer protection from
Defendants' specific conduct described herein.

52.    Defendants' unfair and unlawful acts or practices occurred repeatedly
in Defendants' trade or business and were capable of deceiving and likely to
deceive a substantial portion of the real property insurance purchasing public, and
were therefore also "fraudulent" in under the Unfair Competition Law.

53.    As a direct and proximate result of Defendants' unlawful, unfair and
deceptive practices, Plaintiffs and the Class have suffered, and will continue to
suffer, actual injury and harm.

54.    Defendants have been unjustly enriched and should be required to
make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the
Business & Professions Code.

Defendants should also be enjoined from continuing in engaging in such
acts.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

55.    Plaintiffs incorporate by reference the allegations contained in each
and every paragraph of this Complaint.

56.    Plaintiffs have complied in all material respects with their obligations
under the Policy.

57.    The Policy includes the covenant of good faith and fair dealing which
is an implied term in every contract governed by California law.

58.    Defendants have breached the terms of the Policy, including the

covenant of good faith and fair dealing, as follows:

    (a)    Defendants have engaged in an anticipatory breach of the Policy by repudiating Defendants' obligations under the Policy. As described above, Defendants asserted that they would not pay the limits of insurance for Ordinance or Law coverage if Plaintiffs purchased or built a new house at a different location.

    (b)    Defendants have failed to timely respond to inquiries on behalf of Plaintiffs regarding coverage.

    (c)    Defendants have failed to correctly inform Plaintiffs of their rights under the Policy.

    (d)    Defendants have denied and/or unreasonably delayed payment of Plaintiffs' claims.

59.    These actions have caused Plaintiffs to suffer damages, including but not limited to the denial or delay of benefits under the Policy, and delay in the process of replacing Plaintiffs' houses.

## THIRD CAUSE OF ACTION

### (Bad Faith)

60.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

61.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class.

62.    Defendants have violated the covenant of good faith and fair dealing inherent in every contract. Defendants' bad faith actions include, without limitation:

    (a)    Misrepresenting the Ordinance or Law coverage's application to insured properties in California;

    (b)    Misrepresenting California law on the application of the Ordinance or Law coverage,  including Insurance Code §

2051.5, as to Plaintiffs and the Class;

    (c)   Charging Plaintiffs and the Class an additional premium for Ordiance and Law coverage and unlawfully denying claims for that coverage;

    (d)   Misrepresenting their obligations under the Policy;

    (e)   Failing to reasonably inform Plaintiffs of their rights under the Policy and failing to promptly provide a reasonable explanation of coverage denial asserted by Defendants; and

    (f)   Requesting estimates of code work to be done at replacement properties, which is irrelevant and not reasonably required or material to the resolution of Plaintiffs' or Class Members' claims in derogation of California Code of Regulations Fair Claims Settlement Practices Regulation 2695.7(d).

63.    These actions have caused Plaintiffs and the Class to suffer damages, including without limitation the continued denial or delay of benefits owed to Plaintiffs and the Class under their insurance policies with Defendants.

## FOURTH CAUSE OF ACTION

### (For Unjust Enrichment)

64.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

65.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class.

66.    As a direct and proximate result of Defendants' failure to properly describe the coverage under the Policy and the applicable law, and to pay claims for code upgrades when replacement properties are purchased in a timely fashion (or at all), Defendants have profited through the sale of said insurance coverage. Although this insurance coverage is purchased through Defendants' agents, the money from the sale of said insurance coverage flows directly back to Defendants.

CLASS ACTION COMPLAINT

67.    Defendants have therefore been unjustly enriched due to the earned premiums paid by the Class for Ordinance or Law coverage that was unlawfully retained by Defendants  and earned interest or otherwise added to Defendants' profits when said money should have remained with Plaintiffs and Class Members.

68.    As a result of the Defendants' unjust enrichment, Plaintiffs and Class Members have suffered damages.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief)

69.    Plaintiffs incorporate by reference the allegations contained in each and every paragraph of this Complaint.

70.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Class.

71.    Plaintiffs contend they are entitled to receive the full replacement costs for their prior dwelling, including those required under Ordinance or Law coverage, even if they do not rebuild the insured property and regardless of the cost, quality, or other characteristics of any new house they build or buy.

## RELIEF REQUESTED

72.    Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Defendant, as follows:

(a)    An order certifying the proposed Class, designating Plaintiffs as named representative of the Class, and designating the undersigned as Class Counsel;

(b)    An order enjoining Defendants from further unlawful insurance practices identified herein;

(c)    A declaration as to the application of code upgrade coverage to replacement homes with respect to Defendants' policies, and an Order requiring Defendants to comply with Cal. Ins. Code §

1                       2051.5 as alleged herein;

2       (d)    An award to Plaintiffs and the Class for compensatory,

3                  exemplary, and statutory damages, including interest, in an

4                  amount to be proven at trial;

5       (e)    A declaration that Defendants must disgorge, for the benefit of

6                  the Class, all or part of the ill-gotten profits it received from its

7                  unlawful practices identified herein, and make full restitution

8                  to Plaintiffs and Class Members;

9       (f)    An award of attorneys' fees and costs, as allowed by law;

10      (g)    An award of attorneys' fees and costs pursuant to California

11                 Code of Civil Procedure § 1021.5;

12      (h)    An award of pre-judgment and post-judgment interest, as

13                 provided by law;

14      (i)    Leave to amend the Complaint to conform to the evidence

15                 produced at trial; and

16      (j)    Such other relief as may be appropriate under the

17                 circumstances.

18                  **<u>DEMAND FOR JURY TRIAL</u>**

19 Plaintiffs hereby demand a trial by jury of any and all issues in this action so

20 triable.

21

22   Dated:  October 27, 2020           Respectfully submitted,

23                              Capstone Law APC

24                    By:  */s/ Steven R. Weinmann*

25                           Steven R. Weinmann
                              Mark A. Ozzello

26                           Tarek H. Zohdy
                            Cody R. Padgett

27

28

1

John A. Marshall
MARSHALL & ASSOCIATES
26565 West Agoura Road,
Suite 200
Calabasas, California 91302
Telephone (818) 617-9337
Ext. 2243
John@marshallbusinesslaw.com

Attorneys for Plaintiffs

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT